UNITED STATES FEDERAL DISTRICT COURT

DISTRICT OF CONNECTITCUT

FILED
2015 AUG -7 P 3: 04
US DISTRICT COURT
HARTFORD CT

JOAN T. KLOTH-ZANARD             :

V.                                : DOCKET NO. TBA

SPECIALIZED LOAND SERVICING       : AUGUST 4, 2015

## MOTION TO COMPEL LOAN MODIFICATION

## DEMAND FOR JURY TRIAL

1. On May 26, 2006, the plaintiff entered into an open-ended mortgage deed conventional uninsured Adjustable Rate Rider Option Arm loan with Country Wide. This loan was considered predatory lending in by 2009 in what is called CWALT.

2. Plaintiff's mortgage became $313,300. The loan terms were one year fixed at 6.125%. On the 2nd year the interest rate became adjustable. In the short term future the plaintiff's mortgage was scheduled to balloon to include both interest and principle. It was now reasonably predictable that a loan modification was necessary or the monthly mortgage payment would become unaffordable.

3. In June 2008, Plaintiff started the process of applying for a loan modification. Plaintiff was up to date on her mortgage but realized that making minimum payments was causing her loan to balloon. Bank of America/Country Wide Home Loans tried to scam her into paying additional money claiming she was behind on her mortgage when she

was not. Finally, after the intervention of several state agencies, on November 7, 2008, she signed a loan modification. This modification was for 1.5% interest and to last for 5 years. Plaintiff did not realize that at the end of 5 years, she would go back onto the predatory option arm from 2006.

4. In 2009, Plaintiff became disabled and began applying for SSI.

5. In approximately April 2010, Plaintiff proactively contacted Bank of America to inform them that she was legally disabled on a fixed income that would only support the present loan modification she was on. She explained that she was going to be on a fixed income and that at the end of the loan modification, she would no longer be able to afford the loan under the previous predatory option arm. She asked them to please convert her present loan modification into a permanent loan as this she knew she could afford. Bank of America refused to even consider the idea or help.

6. The Plaintiff did enlist the help of the Banking Commission but they got nowhere either as Bank of America still refused to comply with Fair Housing Act and ADA rights.

7. For the next 3 years, the Plaintiff repeatedly tried to proactively explain that unless the bank helped out by converting her present loan modification to a permanent one, that they would end up back where they started but in even worse shape now that she was legally disabled. Bank of America still refused to help.

8. In April 2013, under the direction of Deborah Buckley at the Department of Banking, the Plaintiff went to a Housing Foreclosure Fair to apply for assistance to prevent the inevitable inability to pay her mortgage when the loan modification she was on, ended in October 2013. Two months later she received a letter stating that they could not help her until her loan modification ended.

9. In approximately August/September 2013, the Plaintiff again approached another agency to assist her with this problem. The new agency was Neighborhood Housing Services (NHS)

10. The plaintiff started the process of applying again for a loan modification. She submitted all of her paperwork in a timely manner.

11. Bank of America repeatedly failed to handle the Plaintiff's case in a timely manner, making her paperwork repeatedly stale and needing to be updated with newer versions.

12. By December 2013, Plaintiff's loan was back on the predatory option arm that she could not afford to pay with an increased interest rate and the fact that the minimum payment was all she could afford and was only ballooning her loan. Plaintiff had no choice but to stop paying the loan as of December 2013.

13. On February 26, 2014, B of A again requested for a 4th time a copy of her Profit and Loss Statement. As it was the end of the month, she waited until the month finished to provide them a completed P & L that including all of February. It was supplied no later than March 6.

14. NHS failed to provide it to Bank of America who closed her file.

15. Plaintiff produced a copy of her letter to NHS that contained her latest P & L proving that she had submitted it in a timely manner. B of A did not care and closed her file making her state a new one. This made 3 attempts at a loan modification in less than a year with not one of those loan modifications actually being denied but just closed and made to restart it.

16. Beginning on June 9th, 2014, Plaintiff again began the process of submitting paperwork to B of A, this time working directly with them.

17. At one point, her point of contact with B of A, Hannibal Armendez called her on the phone. He started to state what additional documents they would need. Plaintiff asked for him to put it in writing and send it either in an email or fax. Mr. Armendez stated he could not do that and it would take extra long for the legal department to put a letter together with this information. Plaintiff explained that to protect herself legally, she needed it all in writing. He refused to comply. Plaintiff reported this to Deborah Buckley who then contacted Bill Lane, her liaison at B of A, who promptly put in an email what they were looking for. All of there demands in Bill Lane's letter had either been submitted already or was now a requested for updated documents as the originals were now stale.

18. Within weeks, Hannibal Armendez's name changed to Annibal and then Unanibal. He was no longer reachable by any of his names or contats.

19. From 2014-2015, every week the plaintiff receives at least 2 fed ex letters that are non-descript providing little information as to what they want. Just stating that she must comply with everything that needs to be submitted. Plaintiff has gone above and beyond in her submittal of paperwork in a timely manner.

20. B of A has repeatedly harassed her claiming she has not submitted all of the documents. Plaintiff repeatedly proves that they are submitted. She even CC's them to Deborah Buckley at the Department of Banking, Bill Lane at Bank of America and Hannibal Armendez (or whatever his real name is), her point of contact at Bank of America.

21. On July 24, 2014, Plaintiff receives a letter telling her they are closing their files on her case because she has not submitted everything.

22. Then on August 1, 2014, she receives two more Federal Express Letters from B of A demanding her bank statements that were already disclosed and another letter that stated they would contact her shortly if there were any missing documents. When she inquired into the banking statements, she was told that she had to produce new statements for each account and provide her daughter's bank accounts.

23. The plaintiff complied immediately with the updated bank statements. As to her daughter's account, her daughter does NOT live with her, she is not on the mortgage, she has her own apartment and is the primary on her own account, thus Bank of America was not entitled to her information. The plaintiff explained this and backed it up with a letter

from the bank explaining the account and how it was set up. No further mention of this issue has been raised.

24. Yet, on August 5, 2014, she again receives another fed ex letter stating she needs to comply with all paperwork requested as per their website. Plaintiff has complied with everything on the website. This fed ex letter did not state what additional information was needed and it was not listed on the website as to what was missing either as there was no paperwork missing.

25. Plaintiff has re-contacted both Deborah Buckley, Bill Lane and Hannibal Armendez to inquire about what is missing. They have not stated anything and in fact, Bill Lane and Mr. Armendez, stated all was received.

26. Prior to the interest rate increase and going back into the predatory option arm, Plaintiff had paid her mortgage in full and on time, including during the entire original loan modification process of 2008 for the entire 5 years.

27. Plaintiff held up her end of the contract, but B of A did not. They knew back in 2010 that the plaintiff was now on a fixed income due to being disabled. They were well aware that her debt to income ratio could not withstand the predatory option arm that Country Wide had put her in back in 2006. Yet, they disregarded the Plaintiffs appeals to not allow it to get this far out of control. Instead, forcing her into a foreclosure situation as her debt to income ratio did not match the loan that B of A

now holds. This was a violation of the Plaintiff's ADA rights and Discrimination of the Disabled under the Fair Housing Act.

28. Plaintiff made it very clear for almost 3.5 years prior to the ending of her 2008 loan modification that if the adjustable option arm loan continues with its original terms after the 2008 Loan Modification ends, that the payment will become once again non-affordable.

29. The type of underwriting process Countrywide initially used placed the plaintiff in a precarious financial situation where the ability to repay this loan would be very low if the interest rate changes upward and leaving her only with one affordable option, a minimum payment that would just balloon her loan.

30. Recently 15 States including Georgia filed lawsuits accusing Countrywide/B of A of violating laws against predatory lending. Their complaints allege that Countrywide's systematically failed to adhere to their own underwriting guidelines; Countrywide engaged many deceptive sales practices, charged unlawful fees and interest rates, and made mortgage loans that Countrywide had no reasonable basis to think that the borrowers could afford, all in violation of the predatory lending laws of the United States.

31. Countrywide ignored conventional guidelines regarding the plaintiff's debt to income ratio. Guidelines state if a borrower is obligated to pay 55% of his monthly income to principal, interest, and property taxes and another 20% to installment loans, medical, or other expenses, they are

distend to fail.

32. Countrywide created a situation whereby even the slightest depreciation on a purchase money transaction by accepting only five percent down on an interest only mortgage would leave the plaintiff with a financial obligation far greater than it's worth. Not only is the plaintiff highly leveraged, but plaintiff is obligated to pay private mortgage insurance, making the payment higher.

33. Given this fact Countrywide had no way of knowing if the plaintiff will be able to afford the mortgage payment, they have a fiduciary responsibility to ensure that the borrower is not in harm's way.

34. On April 27, 2009, Bank of America rebranded Countrywide Home Loans as "Bank of America Home Loans."

35. Pursuant to the Supreme Court of the State of New York complaint CPLR§503 and CPLR§909 and CPLR§3001 concerning Countrywide settlement of widespread predatory lending. The Multistate settlement required modification of numerous mortgage loans meeting agreed financial criteria. At which Countrywide Home Loans or Countrywide Servicing must purchase every modified loan is not less than 100% of the unpaid principal balance of, and any accrued interest on, that loan immediately before modification.

36. This action relates to two series of securitizations known as the CWL series and the CWALT series. Specifically the plaintiff's loan is part of trust series CWALT 2007, she beleves.

37. As of April 2015, Bank of America sold their defective predatory option arm loan with the no. 134956325 to Specialized Loan Servicing, who has continued to stall the loan modification process, violate the plaintiff's ADA, Civil and Federal Rights including dragging this case on so that the plaintiff would be so far in debt that there was no chance of coming back out of it.

38. On August 3, 2015, SLS again sent a harassing communication threatening foreclosure and demand for payment when the Plaintiff despite being in the middle of a loan modification. Again they claimed that she had not submitted all the necessary documents when in fact, she has not only sent them, but sent them numerous times with a CC to the department of banking as a witness as well as other 3rd parties. This is just another attempt to harass and harm the plaintiff and violate her ADA rights in the hopes that she will walk away from her home and leave it to the bank who thinks they will make money on her home if they sell it out from under her.

Conclusion:

For the reasons stated above it is in the interest of all parties to modify this toxic loan. This motion references how "Countrywide" deceived borrowers by misrepresenting loan terms. Borrowers were tricked into accepting unfair loan terms, usually through aggressive sales tactics. They often are taken advantage of because of their lack of understanding of terms and involvement in

complicated transactions. Anecdotal information suggests predatory lending is concentrated in poor and minority communities, where better loans are not readily available. Having outstanding loans that borrowers are gradually paying off is usually good for a bank, but when mortgage loans become toxic, they can become a financial burden.

Wherefore the Plaintiff demands Specialized Loan Servicing to create an appropriate Loan Modification that matches her original loan modification, which she was able to afford from 2008-2013.   And if this must go to trial, the Plaintiff demands a trial by jury.

Regards,

*[signature]*

Joan T. Kloth-Zanard

320 North George's Hill Road

Southbury, CT 06488

## CERTIFICATION of MAILING

This is to certify that a copy of the foregoing was sent via email and fax on this 4th day of August, 2015 to the Appellee's attorney as follows:

Specialized Loan Servicing/Bank of America

8742 Lucent Boulevard

Suite 300

Highlands Ranch, CO 80129-2386

_____

Joan T. Kloth

Plaintiff, Pro-Se

320 North George's Hill Road

Southbury, CT 06488

203-770-0318