UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOAN T. KLOTH-ZANARD<br><br>    Plaintiff,<br><br>    v.<br><br>BANK OF AMERICA &<br>SPECIALIZED LOAN SERVICING,<br><br>    Defendants. | No. 3:15-cv-01208 (MPS) |

**INITIAL REVIEW ORDER AND RULING ON PENDING MOTIONS**

**I.      Introduction**

On August 7, 2015, plaintiff Joan T. Kloth-Zanard filed a thirteen count complaint against Bank of America and Specialized Loan Servicing, alleging violations of the Telephone Consumer Protection Act, the Fair Debt Collection Practices Act, and various Connecticut consumer protection laws, among other claims. Because the plaintiff seeks to proceed *in forma pauperis*, the Court must evaluate her complaint and determine whether it should advance. For the reasons discussed below, the Court dismisses the claims in Count II under 15 U.S.C. §§ 1692c(a) and 1692e, and the claims in Counts IV through XIII. The following claims remain: the claim under 47 U.S.C. § 227(b)(1) in Count I, the claims under 15 U.S.C. §§ 1692d and 1692g in Count II, and the claim under Conn. Gen. Stat. § 26a-648 in Count III.

**II.     Motion to Proceed in Forma Pauperis**

"[A]ny court of the United States may authorize the commencement . . . of any suit . . . without prepayment of fees or security therefor, by a person who submits an affidavit that

includes a statement of all assets such [person] possesses that the person is unable to pay such fees or give security therefor."[1] 28 U.S.C. § 1915(a)(1).

Based on the information that the plaintiff has submitted in her motion, it appears that she is unable to pay the costs and fees associated with this lawsuit. The plaintiff has submitted an affidavit stating that her spouse has no income and that she receives $766 a month in social security or disability benefits as well as an undisclosed amount of income, which she earns at a rate of $13 an hour. (ECF No. 2-2 at 3.) This would meet the requirements of 28 U.S.C. § 1915(a)(1) and warrant granting leave to proceed *in forma pauperis*.

Nonetheless, a court may take judicial notice of a litigant's motions to proceed *in forma pauperis* that are filed in other cases. *Green v. White*, 616 F.2d 1054, 1055–56 (8th Cir. 1980). Based on the information that the plaintiff has submitted in her Motion to Proceed *in Forma Pauperis* in *Kloth-Zanard v. Department of Social Services, et al.*, No. 3:15-cv-01521 (MPS) (D. Conn. October 20, 2015), shortly after filing her pending motion in this case, there may be a question about whether she is unable to pay the costs and fees associated with this lawsuit. In *Kloth-Zanard v. Department of Social Services, et al.*, No. 3:15-cv-01521, Ms. Kloth-Zanard lists her spouse's income as being $9,500 a month.[2] She also receives $766 a month in disability payments. These figures suggest that her annual income is roughly $123,192. In *Kloth-Zanard v. Department of Social Services*, No. 3:15-cv-00124 (MPS) (D. Conn. January 29, 2015), in Ms. Kloth-Zanard's affidavit accompanying her Motion to Proceed *in Forma Pauperis*, she listed her $766 monthly disability payment as her only income. The Court notes this apparent discrepancy,

---

[1] Although the statute uses the phrase "such prisoner possesses," courts have concluded that Congress meant to refer to "such person possesses." *See, e.g.*, *Haynes v. Scott*, 116 F.3d 137, 139–40 (5th Cir. 1997).

[2] The handwriting on the *in forma pauperis* affidavit is not easily legible. Her spouse's income could be $4,500 per month.

but nevertheless grants the pending motion, subject to the following conditions. The Court orders the plaintiff to file under seal in this case by **February 22, 2016** her and her husband's 2014 tax returns, copies of her husband's last three pay stubs, an estimate of her and her husband's income for 2015, and an affidavit by Ms. Kloth-Zanard explaining the differences in the three *in forma pauperis* affidavits over time. The affidavit shall be limited to five double-spaced pages. Failure to comply with this order may result in dismissal of this case with prejudice.

### III.     Initial Review

#### A.     Legal Standard

Under 28 U.S.C. § 1915(e)(2)(B)(ii), the Court must evaluate the plaintiff's complaint and dismiss the case if it "fails to state a claim on which relief may be granted."  In evaluating whether a plaintiff has stated a claim for relief, the Court must "accept as true all factual allegations in the complaint and draw all reasonable inferences" in plaintiff's favor. *Cruz v. Gomez*, 202 F.3d 593, 596 (2d Cir. 2000). The Court need not accept conclusory allegations and may allow the case to proceed only if the complaint pleads "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (citing *Twombly*, 550 U.S. at 554–55). When a plaintiff submits a complaint *pro se*, the reviewing Court shall construe the allegations liberally, raising "the strongest arguments [they] suggest[]." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). Even a *pro se* plaintiff, however, must meet the standard of facial plausibility set forth above. *See Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) ("[A] *pro se* complaint must state a plausible claim for relief.") (citing *Harris v. Mills*, 572, F.3d 66, 73 (2d Cir. 2009)).

**B.     Factual Allegations**

The plaintiff alleges the following facts in her complaint. The plaintiff obtained an adjustable rate, subprime mortgage from Country Wide Home Loans. (Complaint at ¶¶ 17–18, 26.) Brokers sold the loans to the plaintiff as "the 'best' loans available," but did not disclose the risk associated with them, such as future rate increases or underwriting standards. (*Id.* at ¶ 21.) In 2008, the defendant Bank of America took over the plaintiff's mortgage from Countrywide. (*Id.* at ¶ 18.) Bank of America "steer[ed]" the plaintiff to loans that offered interest-only payments or minimum monthly payments that were less than the amount of interest owed. (*Id.*) The plaintiff filed for a loan modification in June 2008. (*Id.* at ¶ 22.) She received a 5-year loan modification but was not told at the time that after five years the loan would return to an adjustable rate mortgage. (*Id.* at ¶ 23.) In 2010, when Bank of America told the plaintiff that the loan would revert to an adjustable rate mortgage in 2013, the plaintiff informed Bank of America that she was disabled and could only afford to pay the loan as modified without an adjustable rate. (*Id.* at ¶¶ 23–25.) Bank of America "refused to work with her" and stalled attempts to arrange a second loan modification by causing her to restart the loan modification application six times in two years. (*Id.* at ¶ 27.)

During this time, Bank of America and Specialized Loan Servicing, neither of which had permission to call the plaintiff's home or cellular phones, repeatedly called the plaintiff to "harass" her. (*Id.* at ¶ 30.) At least six times in one year, Bank of America entered the plaintiff's property to place foreclosure notices at her front door. (*Id.* at ¶ 31.) The defendants called plaintiff's home and cellular phone at least 104 times using an "automatic telephone dialing system" from February 2014 to April 2015 until the plaintiff told Specialized Loan Servicing to stop. (*Id.* at ¶¶ 36, 39.)

On May 6, 2015, the plaintiff contacted Bank of America and Specialized Loan Servicing for "Investor Information pertaining to her supposed mortgage debt." (*Id.* at ¶ 32.) The defendants did not respond. (*Id.* at ¶ 34.) On July 9, 2015, Specialized Loan Servicing then sent a "strange man" driving a "blue Prius type vehicle" onto her property with a camera. (*Id.* at ¶ 37.)

On June 15, 2015, after the plaintiff received a collection notice from Bank of America and Specialized Loan Servicing, she sent another request for "Investor Information," and a written dispute of the debt "requesting validation of the debt" and the name and address of the original creditor. (*Id.* at ¶¶ 33, 35.) On August 3, 2015, Specialized Loan Servicing sent a harassing email to the plaintiff, which threatened foreclosure because the plaintiff had not provided "necessary information," even though the plaintiff had sent "numerous copies of the same documents over and over . . . ." (*Id.* at ¶ 42.)

**C.  Discussion**

The thirteen counts will be addressed seriatim.

    *1.  Count I: Violations of 47 U.S.C. § 227(b)(1)*

It is unlawful for any person within the United States to make any call using an "automatic telephone dialing system . . . to any telephone number assigned to . . . any service for which the called party is charged for the call . . . ." 47 U.S.C. § 227(b)(1). An "automatic telephone dialing system" is equipment that can call telephone numbers that are stored or produced "using a random or sequential number generator . . . ." *Id.* at § 227(a)(1). There is a private right of action for violations of this law. *Id.* at § 227(b)(3).

Here, the plaintiff alleges that the defendants called her on her cellular and home phones at least 104 times with an "automatic telephone dialing system." (Complaint at ¶¶ 44–45.) While the plaintiff does not specifically allege that she was "charged for the call[s]," it is reasonable to

infer that she was charged for the use of her cellular phone. *See Cruz*, 202 F.3d at 596 (court must "draw all reasonable inferences" in the plaintiff's favor). Therefore, the plaintiff has stated a claim for violations of 47 U.S.C. § 227(b)(1).

        2.        *Count II: Violations of the Fair Debt Collection Practices Act*

The plaintiff brings four claims in Count II. First, she claims that the defendants violated 15 U.S.C. § 1692c(a), which prohibits communicating with a consumer concerning debt collection at certain times and places and when the consumer is represented by an attorney. 15 U.S.C. § 1692c(a). Because she fails to allege facts suggesting that the defendants called her in a manner or at times prohibited by this provision, (Complaint at ¶ 53), her claim under 15 U.S.C. § 1692c(a) is dismissed.

She next claims that the defendants violated 15 U.S.C. § 1692d(5), which provides that a debt collector may not "engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt," such as by "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." 15 U.S.C. § 1692d(5). The plaintiff alleges that the defendants repeatedly called the plaintiff to harass her. (Complaint at ¶ 30.) The defendants called her at least 104 times over fifteen months, which is about seven calls a month. (*Id.* at ¶ 36.) Specialized Loan Servicing sent a man onto her property and sent a letter stating that the plaintiff had failed to provide information that the plaintiff had repeatedly provided. (*Id.* at ¶¶ 35, 37.) This is sufficient to describe conduct "the natural consequence of which is to harass . . ." and thus the plaintiff has stated a claim for violations of 15 U.S.C. § 1692d.

Her third claim is that the defendants violated 15 U.S.C. § 1692e, which provides that a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The plaintiff says that the defendants engaged in "misleading and false" communication about the "character, amount, and legal status" of her debt. (Complaint at ¶ 53.) But she does not plead any facts to support this allegation. "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient to state a claim on which relief may be granted. *Iqbal*, 556 U.S. at 679. This claim is therefore dismissed because the plaintiff does not indicate what was communicated, or how it was false, deceptive, or misleading. 15 U.S.C. § 1692e.

Next she claims that the defendants violated 15 U.S.C. § 1692g, which provides that within five days after a debt collector first contacts a consumer about the collection of a debt, the debt collector must notify the consumer in writing that the debt collector will assume that the debt is valid if the consumer does not dispute the debt within thirty days of the notice. 15 U.S.C. § 1692g(a). If, within the thirty day period, the consumer disputes the debt in a written notice to the debt collector or "requests the name and address of the original creditor, the debt collector shall cease collection of the debt" until the debt collector sends the information to the consumer. *Id.* at § 1692g(b).

Here, the plaintiff alleges that the defendants continued to attempt to collect a debt after she disputed the debt in writing and requested the name and address of her original creditor within thirty days of receiving a collection notice. (Complaint at ¶¶ 33, 35.) Thus, she has stated a claim under 15 U.S.C. § 1692g.

3.        *Count III: Violation of Conn. Gen. Stat. § 36a-648*

It is a violation of Connecticut law to use "any abusive, harassing, fraudulent, deceptive or misleading representation, device or practice to collect or attempt to collect a debt . . . ." Conn. Gen. Stat. § 36a-648(a). "An action to enforce liability under this section may be brought . . . not later than one year after the date on which the violation occurs." *Id.* at § 36a-648(d). This complaint was filed on August 7, 2015. Only some of the defendants' alleged violations occurred after August 7, 2014. Since August 7, 2014, the plaintiff received approximately seven calls a month from the defendants who also sent a "strange man" onto her property, and sent a harassing email to the plaintiff that claimed she had not submitted paperwork even though the plaintiff had repeatedly provided it. (Complaint at ¶¶ 36–37, 39, 42.) The plaintiff has met her burden of stating a claim under Conn. Gen. Stat. § 36a-648.

4.        *Count IV: Violation of Public Act No. 14-84*

The plaintiff's fourth count is an allegation that the defendants violated Connecticut Public Act No. 14-84. The act is codified at Conn. Gen. Stat. §§ 12-498, 49-24 to 49-28 and requires that the mortgagee provide notice to the mortgagor of default and the option of discussing with the mortgagor "whether the property may, by mutual consent of the mortgagee and mortgagor, be marketed for sale pursuant to a listing agreement . . . ." *See* Conn. Gen. Stat. § 49-24b(a). The plaintiff does not allege that the defendants failed to provide such a notice. Rather, she argues that the defendants violated this act by not making "any other offers that were reasonable or that did not put the plaintiff into further financial devastation" and by claiming that the plaintiff had not provided "complete information so they could provide other options" when the plaintiff had given them sufficient information. (Complaint at ¶¶ 65–67.) Because these actions do not violate Public Act No. 14-84, the plaintiff's fourth count is dismissed.

     5.     *Count V: Violation of Conn. Gen. Stat. §§ 49-31d to 49-31g*

When a lender begins an action to foreclose a mortgage of residential real property, the lender must give notice to the homeowner of certain statutory provisions. Conn. Gen. Stat. § 49-31e(a). The plaintiff alleges that she was not given the notice required by Conn. Gen. Stat. §§ 49-31d to 49-31g. (Complaint at ¶ 70.) The remedy for a violation of these provisions is a court order staying the foreclosure action for fifteen days to allow the homeowner to apply for "protection from foreclosure." Conn. Gen. Stat. § 49-31e(d). This case is not a foreclosure action and no foreclosure is alleged. Therefore, the plaintiff's invocation of Conn. Gen. Stat. §§ 49-31d to 49-31g is not supported by the facts alleged in the complaint. Count V is dismissed.

     6.     *Count VI: "Violation of HAMP Rules"*

The plaintiff seeks the "[r]eversal of all fees and charges by the Bank of America . . ." for violations of the Home Affordable Mortgage Program ("HAMP") rules. "The U.S. Department of the Treasury implemented HAMP to help homeowners avoid foreclosure amidst the sharp decline in the nation's housing market in 2008." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 554 (7th Cir. 2012). "HAMP and its enabling statute do not contain a federal right of action . . . ." *Id.* at 555. Therefore, the Court dismisses Count VI.

     7.     *Count VII: "Violation of Perfection of Chain of Title"*

The plaintiff asks the Court for the "dissolution" of the debt that Bank of America and its servicers claim that she owes. (Complaint at ¶¶ 89–91.) Although it is not clear what she is alleging in this count, the plaintiff may have intended to bring a petition to discharge her mortgage under Conn. Gen. Stat. § 49-13:

> When the record title to real property is encumbered . . . by any undischarged mortgage and . . . the mortgage has become invalid, and . . . no release of the encumbrance to secure such note or evidence of indebtedness has been given, . . . the person owning the property, or the equity in the property, may bring a petition

9

>to the superior court . . . claiming a judgment as provided in this section [to discharge the mortgage].

Conn. Gen. Stat. § 49-13. Such a claim would fail, however, because this section does not allow a court to declare a mortgage invalid—the relief sought by Ms. Kloth-Zanard—unless the invalidity of the mortgage is undisputed. *Gordon v. Tufano*, 188 Conn. 477, 483 (1982). The "purpose of a statute of this type is to provide a simple method whereby a mortgage, *the invalidity of which is undisputed*, may be declared invalid by the court and removed as a cloud on the title to the property." *Id.* When the validity of the mortgage is in dispute, an action to quiet title is the proper remedy. *Id.* at 484 n.5.

It is also possible that Ms. Kloth-Zanard seeks to bring a quiet title action under Conn. Gen. Stat. § 47-31, which provides in relevant part that:

>(a) An action may be brought by any person claiming title to, or any interest in, real . . . property . . . against any person who may claim . . . to have any interest in the property, or any lien or encumbrance on it, adverse to the plaintiff . . . for the purpose of determining such adverse . . . claim, and to clear up all doubts and disputes and to quiet and settle the title to the property.
>
>(b) The complaint in such action shall describe the property in question and state the plaintiff's claim, interest or title and the manner in which the plaintiff acquired the claim, interest or title and shall name the person or persons who may claim the adverse estate or interest.

Conn. Gen. Stat. § 47-31. To the extent she seeks to bring such an action, however, she has failed to comply with the requirement that she "describe the property in question." *Id.*; *Gager v. Carlson*, 146 Conn. 288, 289 (1959) ("An essential of a complaint under our statute for quieting title . . . is a statement of the plaintiff's ownership of the land described or of an interest in it, and of his title thereto."). Because the Court cannot discern any cognizable claim in Count VII, that count is dismissed.

*8.     Count VIII: Discrimination Due to Disability*

The plaintiff invokes 42 U.S.C. §§ 3604, 12131–34 and 29 U.S.C. § 794. Discrimination in the sale or rental of housing is prohibited by 42 U.S.C. § 3604, but the plaintiff does not allege that the defendants were discriminatory in connection with the sale or rental of a property. Her claims focus instead on the modification of her mortgage. Therefore, her claim under 42 U.S.C. § 3604 is dismissed.

The next provisions cited by the plaintiff, 42 U.S.C. §§ 12131–34, relate to discrimination by a "public entity," such as a state government or agency. 42 U.S.C. § 12131(1). The claims under 42 U.S.C. §§ 12131–34 are dismissed because the defendants, a bank and loan servicer, are not public entities. *Id.*

She then relies on 29 U.S.C. § 794(a), which provides that no "otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability be . . . subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). The plaintiff has not alleged that she has been subjected to discrimination under a program or activity receiving Federal financial assistance. Further, other than the conclusory claim that she is "legally disabled," (Complaint at ¶ 8), she has not alleged that that she is a "qualified individual with a disability," for example, that she has "a physical or mental impairment that substantially limits one or more major life activities" as required by 29 U.S.C. §§ 705(20)(B), 794(a); 42 U.S.C. § 12102. For these reasons, Count VIII in its entirety is dismissed.

       9.      *Count IX: Violations of Americans with Disabilities Act*

In Count IX, like Count VIII, Ms. Kloth-Zanard refers to 29 U.S.C. 794 and 42 U.S.C. §§ 12131–34, but as noted above, she has failed to allege a claim under those statutes. Count IX is therefore dismissed.

       10.      *Count X: Violation of the Truth in Lending Act*

In Count X, the plaintiff refers to the Truth in Lending Act and Regulation Z. In the Code of Federal Regulations, Regulation Z is nearly 900 pages in length. The Truth in Lending Act is codified in over seventy different sections of Title 15 of the United States Code. The plaintiff provides little indication as to what portion of either law the defendants have allegedly violated as she cites no specific statutory or regulatory provision or otherwise indicates the nature of her claim. "Neither the defendants nor the court should be required to expend the time, effort and resources necessary to parse through plaintiff's pleading in order to determine what claims, if any, plaintiff has alleged." *Ceparano v. Suffolk Cnty.*, No. 10-CV-2030-SJF-ATK, 2010 WL 5437212, at *3 (E.D.N.Y. Dec. 15, 2010) (discussing Fed. R. Civ. P. 8). Therefore, as the plaintiff did not indicate the statutory and regulatory provisions of the Truth in Lending Act and Regulation Z that she claims the defendant violated, or plead any facts to support any such alleged violations, Count X is dismissed without prejudice.

       11.      *Count XI: Violation of 12 U.S.C. §§ 2601–17*

"If any servicer of a federally related mortgage loan receives a qualified written request from the borrower . . . for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 5 days . . . ." 12 U.S.C. § 2605. On June 15, 2015, the plaintiff sent a written request, presumably to Specialized Loan Servicing, for a "Securitization Audit" and other information about her mortgage.

(Complaint at ¶ 104.) Specialized Loan Servicing did not respond or otherwise answer within the period required by statute. (*Id.*) Drawing all reasonable inferences in favor of the plaintiff, *Cruz*, 202 F.3d at 596, it appears that this letter was intended to suggest "that the [plaintiff's] account [was] in error." 12. U.S.C. § 2605(e)(1)(B)(ii). However, a claim under § 2605 requires a plaintiff to allege that damages were sustained as a result of a violation of § 2605. *Kapsis v. Am. Home Mortg. Servicing Inc.*, 923 F. Supp. 2d 430, 444 (E.D.N.Y. 2013). Here, the plaintiff has not alleged either "(1) actual damages to the borrower as a result of the failure to comply with § 2605; or (2) statutory damages in the case of a pattern or practice of noncompliance with the requirements of § 2605." *Id.* at 444–45 (internal citations and quotations omitted). Therefore, Count XI is dismissed.

### 12. Count XII: Violation of 15 U.S.C. § 1681

The plaintiff claims that the defendants violated 15 U.S.C. § 1681. That section, however, merely recites congressional findings and a statement of purpose. 15 U.S.C. § 1681. It contains no imperatives or prohibitions. *Id.* Therefore, the plaintiff has not stated a claim under 15 U.S.C. § 1681.

### 13. Count XIII: Violation of Conn. Gen. Stat. § 53a-183

The plaintiff seeks damages for fifty-two violations of a criminal statute. (Complaint at ¶ 108.) The Court is not aware of any authority, and the plaintiff provides none, that would allow a private individual to enforce the criminal statute. Further, criminal statutes generally cannot be enforced by civil actions. *Turner v. Boyle,* No. 3:13-cv-616 SRU, 2015 WL 4393005, at *25 (D. Conn. July 15, 2015) (citing *Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 86–87 (2d Cir. 1972)). Therefore, Count XIII is dismissed.

**IV.     Conclusion**

The Court orders the plaintiff to file under seal in this case by **February 22, 2016** her and her husband's 2014 tax returns, copies of her husband's last three pay stubs, an estimate of her and her husband's income for 2015, and an affidavit by Ms. Kloth-Zanard explaining the differences in the three *in forma pauperis* affidavits over time. The affidavit shall be limited to five double-spaced pages. Failure to comply with this order may result in dismissal of this case with prejudice. The Motion to Proceed *in Forma Pauperis* (ECF No. 2) is GRANTED, subject to the conditions discussed above.

The Court dismisses the claims in Count II under 15 U.S.C. §§ 1692c(a) and 1692e, and the claims in Counts IV through XIII. The following claims remain: the claim under 47 U.S.C. § 227(b)(1) in Count I, the claims under 15 U.S.C. §§ 1692d and 1692g in Count II, and the claim under Conn. Gen. Stat. § 26a-648 in Count III.

The Motion to Compel Loan Modification (ECF No. 5) is DENIED without prejudice. Such relief may be included in the prayer for relief contained in the complaint. The Motion by Pro Se Litigant to Participate in Electronic Filing (ECF No. 8) is DENIED. The Motion for Court Appointed Attorney (ECF No. 9) is DENIED without prejudice. The Motion for Hearing (ECF No. 10) is DENIED. If the Court finds it necessary to schedule a hearing to adjudicate a particular motion, it will do so by providing reasonable notice to the parties by order on the docket.

The Motion to Amend (ECF No. 11) is DENIED without prejudice subject to the plaintiff including a copy of the proposed amended complaint with a timely motion to amend.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut
January 21, 2016