UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOAN T. KLOTH-ZANARD,<br><br>    Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, ET. AL.<br><br>    Defendants. | No. 3:15-cv-1208 (MPS) |

## RULING ON MOTIONS TO DISMISS

*Pro se* Plaintiff, Joan T. Kloth-Zanard, has sued Bank of America, N.A. ("Bank of America"), Specialized Loan Services, LLC, Wells Fargo/Northwest Bank Minnesota ("Wells Fargo"), Mortgage Electronic Registration Services, Inc., and The Bank of New York Mellon. She alleges defendants violated: (i) Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("Rehabilitation Act") (count one); (ii) the Telephone Consumer Protection Act, 47 U.S.C. § 227 et. seq. ("TCPA") (count two); (iii) the Connecticut Creditors Collection Practices Act, Conn. Gen. Stat. § 36a-645 et. seq. ("CCPA") (count three); (iv) 18 U.S.C. § 242 (count four); (v) the covenant of good faith and fair dealing (count five); and (iv) 18 U.S.C. §§ 471-74 (count six). Bank of America and Wells Fargo have filed separate motions to dismiss Plaintiff's complaint.[1] (ECF Nos. 49, 62.) For the reasons set forth below,

---

[1] Defendants Bank of New York Mellon, Specialized Loan Servicing, LLC, and Mortgage Electronic Registration Systems, Inc. also moved to dismiss the complaint. (ECF No. 26) Because they failed to provide Plaintiff, who is *pro se*, the requisite notice under the Local Rules when their motion to dismiss was filed, I dismissed that motion without prejudice to renewal once those defendants served Plaintiff with proper notice. (ECF No. 68.) They have done so.

1

(i) Bank of America's motion to dismiss is granted in part and denied in part. All of Plaintiff's claims against Bank of America are dismissed except for her TCPA and CCPA claims; and

(ii) Wells Fargo's motion to dismiss is granted.

I. **Factual Allegations**

Plaintiff makes the following factual allegations, which I assume to be true.[2]

Countrywide Home Loans provided an adjustable rate, subprime mortgage loan to the Plaintiff secured by her home in Southbury, Connecticut. (ECF No. 17 at 7); (ECF No. 49-2 at 2)[3] In 2008, Countrywide transferred that mortgage to Bank of America. (*Id.*) On October 1, 2008, Bank of America approved Plaintiff for a loan modification. (*Id.* at 9.) Under the terms of the loan modification, the interest due on Plaintiff's loan was 1.5% interest for five years. (*Id.*) Bank of America did not disclose to Plaintiff that the interest rate would return to an adjustable rate interest after the five-year term expired. (*Id.*)

Some time during 2008 or 2009, Plaintiff became disabled. (*Id.*) Two years later, in April 2010, Plaintiff became "legally disabled." (*Id.*) That same month, Plaintiff informed Bank of America of her legal disability and that she was "on a small fixed income that would only support the present loan modification." (*Id.*) Despite knowledge of her disability and her fixed income, Bank of America "refused to work with [the Plaintiff]" in modifying her loan. (*Id.* at

---

(ECF No. 69.) In accordance with my order (ECF No. 68), Plaintiff has until October 17, 2017 to file a response, after which time, I will consider the motion to be fully briefed.

[2] I cite Plaintiff's amended complaint by ECF page number because of duplicative paragraphs in the amended complaint.

[3] I may consider the mortgage documents because Plaintiff relies on them in her complaint. *See Cortec Industries, Inc. v. Sum Holdings, L.P.*, 949 F.2d 42, 48 (2d Cir. 1991)("Where Plaintiff has actual notice of all the information in a movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated.")(internal quotation marks and citations omitted).

10.) Bank of America "deliberate[ly] stall[ed]" the loan modification process. (*Id*. at 3.) Bank of America's delays caused Plaintiff to restart the loan modification application process six times in two years. (*Id*. at 10.) Bank of America also dispatched an agent on six different occasions to post foreclosure notices on Plaintiff's front door. (*Id*.)

Beginning in February 2014, Bank of America – without Plaintiff's permission – began calling her using an "automatic telephone dialing system." (*Id*. at 11.) Using that system, over the next fourteen months until April 2015, Bank of America called Plaintiff's cellular and home phones "no less than 104 times." (*Id*.) The next month, on May 6, 2015, Plaintiff contacted Bank of America and Specialized Loan Servicing for "Investor Information pertaining to her supposed mortgage debt." (*Id*. at 10.) Neither Bank of America nor Specialized Loan Services responded. (*Id*.) Specialized Loan Servicing, however, did send a "strange man" driving a "blue Prius type vehicle" to Plaintiff's home. (*Id*. at 11.) On November 5, 2015, Plaintiff received a delinquency notice. (*Id*. at 12.)

## II. Legal Standard

In considering a motion to dismiss under Rule 12(b)(6), I must construe the complaint liberally, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). A court may allow a case to proceed only if the complaint pleads "enough facts to state a claim to relief that is plausible on its face." *Id*. "A claim has facial plausibility when the pleaded content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(internal quotation marks and citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

When a plaintiff submits a complaint *pro se*, the court must construe the allegations liberally, raising "the strongest arguments [they] suggest[]." *Abbas v. Dixon*, 480 F.3d. 636, 639 (2d Cir. 2007). A *pro se* plaintiff, however, still must meet the standard of facial plausibility. *See Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013)("[A] *pro se* complaint must state a plausible claim for relief.")(internal quotation marks and citations omitted).

### III. Discussion

At the outset, I note that the amended complaint names Wells Fargo as a defendant but makes no allegations concerning any conduct that Wells Fargo allegedly engaged in that gave rise to any of Plaintiff's claims. She only makes a single allegation concerning it: that on January 19, 2005, there was a release of the mortgage from "what looks like [Wells Fargo.]" (ECF No. 17 at 6.) Even liberally construed, this does not describe actionable conduct. Accordingly, because there are no allegations to support her causes of action against Wells Fargo, all of Plaintiff's claims against Wells Fargo are dismissed. I now consider Bank of America's motion to dismiss the claims against it.

#### A. The ADA and Rehabilitation Act Claims (count 1)

In count one, Plaintiff invokes Title II of the ADA -- 42 U.S.C. §§ 12131-12134 and 28 C.F.R. §§ 35 --, 29 U.S.C. § 794, and 28 C.F.R. § 36. (ECF No.17 at 12.) Her Title II claims fail – for the same reason noted in the Court's earlier order – because Bank of America is a private entity (a national banking association), not a "public entity," and as a private entity, it may not be sued under Title II. (ECF No. 12 at 11); *see Positano v. Zimmer*, 2013 WL 12084482, at *4 (E.D.N.Y. Dec. 9, 2013)(observing Title II "does not [apply to] private individuals or private entities"); *Warren v. Goord*, 2006 WL 1582385, at *17 (W.D.N.Y. May 26, 2006)(noting "Title II of the ADA does not recognize a cause of action for discrimination by

4

private [entities], but rather, only public entities")(internal quotation marks and citations omitted).

Her claim under 29 U.S.C. § 794 suffers from a similar flaw, which was also noted in the Court's earlier order: she does not allege, as she must, that she was subject to discrimination under a program or activity receiving Federal financial assistance, and other than her conclusory allegation that she is "legally disabled," she does not allege that she is a "qualified individual with a disability." (ECF No. 12 at 11.) That claim is therefore dismissed.

Finally, Plaintiff has failed to state a claim under 28 C.F.R. § 36. First, that regulation implements Title III, not Title II, of the ADA, and Plaintiff makes no claim under Title III. 28 C.F.R. 36.101 (a)("The purpose of this part is to implement subtitle A of title III of the Americans with Disabilities Act of 1990…") In any event, that rule applies to "any (1) public accommodation; (2) commercial facility; or (3) private entity that offers examinations or courses related to applications licensing, certification, or credentialing for secondary or postsecondary education, professional, or trade purposes." *Id.* at § 36.102. Plaintiff makes no allegation that the regulation applies to Bank of America (nor are there factual allegations in the complaint that so suggest).

**B.  The TCPA Claim (count 2)**

Plaintiff has plausibly stated a claim that Bank of America violated the TCPA. Under the TCPA, it is unlawful for any person within the United States to make any call using an "automatic telephone dialing system . . . to any telephone number assigned to . . . any service for which the called party is charged for the call . . . ." 47 U.S.C. § 227(b)(1). An "automatic telephone dialing system" is equipment that can call telephone numbers that are stored or produced "using a random

or sequential number generator . . . ." *Id.* at § 227(a)(1). There is a private right of action for violations of this law. *Id.* at § 227(b)(3).

Plaintiff alleges that Bank of America called her cellar and home phones at least 104 times using an "automatic telephone dialing system." (ECF No. 17 at 31-32.) She also alleges, contrary to Bank of America's assertion, that she did not give Bank of America consent to call her cell phone. (*Id.* at 31.) As with her initial complaint, she does not specifically allege that she was "charge[d] for the call[s]" but, when all reasonable inferences are drawn in her favor, it is reasonable to conclude that she was charged at least for the use of her cell phone.

Bank of America's arguments are without merit. Bank of America cites *Lundestedt v. Deutsche Bank, Nat'l Trust Co.*, No, 3:13-cv-001423, 2016 WL 3101999, at *4 (D. Conn. June 2, 2016) for the proposition that "simply alleging that defendants used an [an automatic telephone dialing system] is fatal to a plaintiff's claim." (ECF No. 49-1 at 13.) That case is plainly distinguishable from this one because there, unlike here, "[p]laintiff did not plead in his complaint either that he was called on a cellular phone or that defendants used ATDS." *Lundestedt*, 2016 WL 3101999 at *4 (internal quotation marks and citations omitted). Bank of America also argues the TCPA claim fails – without citing any authority – because the amended complaint does not distinguish between the calls Plaintiff received in violation of the TCPA and the calls Plaintiff received in connection with the loan modification process. (ECF No. 49-1 at 13.) But the amended complaint need not do so to plead a cognizable claim, and its allegations regarding Bank of America are reasonably specific and, in any event, suggest that Bank of America was calling her more than necessary to discuss a loan modification. (ECF No. 17 at 31)("Defendant [Bank of America]…has [not complied] with [the TCPA] by using an automatic telephone dialing system to call the Plaintiff's cellular and home phone number no less than 104 times.")

6

### C. The CCPA Claim (count 3)

The CCPA makes it unlawful for a creditor to use "any abusive, harassing, fraudulent, deceptive or misleading representation, device or practice to collect or attempt to collect any debt." Conn. Gen. Stat. § 36a-646. First, Bank of America argues that Plaintiff has failed to allege that it was a "creditor" within the CCPA. (ECF No. 49-1 at 14.) Plaintiff alleges that Bank of America assumed her loan from Countrywide, and that she entered into a loan modification agreement with Bank of America. (ECF No. 17 at 7, 10.) Those allegations easily satisfy the CCPA's definition of a creditor which includes "any person to whom a debt is owed by a consumer debtor and such debt results from a transaction occurring in the ordinary course of such person's business . . . ." Conn. Gen. Stat. § 36a-645(2). Bank of America next argues that there are no allegations that it was engaged in "any abusive, harassing, fraudulent, deceptive or misleading representation, device or practice." (ECF No. 49-1 at 14.) Calling the Plaintiff nearly 7 times a month for 14 months concerning a debt without her permission and sending an agent no less than six times to post foreclosure notices on her property amount to harassing and abusive conduct.[4] (ECF No. 17 at 10-11.) Finally, Bank of America argues that the CCPA claim fails because Plaintiff failed to plead the claim with particularity as required under Fed. R. Civ. P. 9(b). Rule 9(b) applies to averments of fraud or mistake, neither of which is essential to a CCPA claim. *See* Fed. R. Civ. P. 9(b)("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.") And the case Bank of America cites for that proposition does not apply Rule 9(b)'s requirement to the abusive and harassing elements of the CCPA claim. *See Claude v. Wells Fargo Home Mortgage*, 2014 WL 4073215, at

---

[4] The Court assumed in its January 22, 2016 order that the 104 calls were evenly divided over the fourteen months Plaintiff alleged that she received them. (ECF No. 12 at 8.) The same assumption is made here.

7

* 6 (D. Conn. Aug. 14, 2014)("…The Plaintiff has not pled sufficient facts required by Rule 9(b) to maintain a claim that Wells Fargo used a fraudulent, deceptive or misleading representation, device or practice…..There remains, however, the issue of whether the Plaintiff has alleged any abusive or harassing behavior in violation of [the CCPA.]")(internal quotation marks and citations omitted).[5]

### D. Breach of Covenant of Good Faith and Fair Dealing (count 5)

Plaintiff asserts a claim for breach of covenant of good faith and fair dealing. (ECF No. 17 at 35.) But she makes no factual allegations as to that count. Accordingly, that claim is dismissed.

### E. Remaining Counts (counts 4 and 6)

Plaintiff also claims violations of 18 U.S.C. §§ 242, 471-474. These are federal criminal statutes and do not provide a private right of action. *Sheehy v. Brown*, 335 Fed. Appx. 102, 104 (2d Cir. 2009)("[F]ederal criminal statutes do not provide private causes of action")(internal quotation marks and citations omitted). Accordingly, counts four and six of the amended complaint are dismissed.

## IV. Conclusion

For the foregoing reasons, (i) Wells Fargo's motion to dismiss is granted; and (ii) Bank of America's motion to dismiss is granted in part and denied in part. The following claims remain against Bank of America: the TCPA claim (count 2) and the CCPA claim (count 3). The Clerk is directed to terminate Wells Fargo as a defendant from the case.

---

[5] Bank of America also moves to dismiss this claim and the TCPA claim on the grounds that those claims are time barred, but as discussed above, Plaintiff alleges Bank of America called her no less than 104 times between February 2014 and April 2015 – conduct that is plainly within the statute of limitations.

8

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut
October 5, 2017