UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JOAN T. KLOTH-ZANARD,

    Plaintiff,

v.

BANK OF AMERICA, ET. AL.

    Defendants.

No. 3:15-cv-1208 (MPS)

# RULING ON MOTION TO DISMISS

*Pro se* Plaintiff, Joan T. Kloth-Zanard, has sued Bank of America, N.A. ("Bank of America"), Specialized Loan Services, LLC ("SLS"), Wells Fargo/Northwest Bank Minnesota, Mortgage Electronic Registration Services, Inc. ("MERS"), and The Bank of New York Mellon ("BONY"). She alleges defendants violated: (i) Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("Rehabilitation Act") (count one); (ii) the Telephone Consumer Protection Act, 47 U.S.C. § 227 et. seq. ("TCPA") (count two); (iii) the Connecticut Creditors Collection Practices Act, Conn. Gen. Stat. § 36a-645 et. seq. ("CCPA") (count three); (iv) 18 U.S.C. § 242 (count four); (v) the covenant of good faith and fair dealing (count five); and (iv) 18 U.S.C. §§ 471-74 (count six). A motion to dismiss filed by defendants Bank of America and Wells Fargo was granted in part and denied in part. (*See* ECF No. 70). Defendants BONY, MERS, and SLS also jointly move to dismiss Plaintiff's complaint. For the reasons set forth below, (i) the motion to dismiss is granted with respect to the claims against MERS and BONY; (ii) the motion is granted in part and denied in part with respect to SLS. All of Plaintiff's claims against SLS are dismissed except for her TCPA and CCPA claims.

1

I.      **Factual Allegations**

Plaintiff makes the following factual allegations, which I assume to be true.[1]

Countrywide Home Loans provided an adjustable rate, subprime mortgage loan to the Plaintiff secured by her home in Southbury, Connecticut. (ECF No. 17 at 7); (ECF No. 49-2 at 2).[2] The mortgage was transferred several times, with MERS serving as a facilitator, before eventually ending up with Bank of America in 2008. (ECF. No. 17 at 6). In 2008, Bank of America approved Plaintiff for a loan modification, which provided for a 1.5% interest rate for five years. (*Id.*). Bank of America failed to disclose to Plaintiff that the interest rate would return to an adjustable rate after the five-year term expired. (*Id.*).

In 2008, plaintiff became disabled and confined to a wheelchair. (*Id.* at 9). Plaintiff contacted Bank of America in April of 2010 to inform it that she was legally disabled and that she would only be able to afford the 1.5% modified rate going forward. (*Id.*). Despite this knowledge, Bank of America "refused to work with [the Plaintiff]" in modifying the terms of her loan. (*Id.* at 10). As Plaintiff attempted to engage with Bank of America to modify the terms of the mortgage, it and SLS "repeatedly called to harass the Plaintiff." (*Id.*). Bank of America and SLS called the Plaintiff's cellular and home telephone "no less than 104 times from February, 2014, [through] April 2015" using an automated dialing system. (*Id.* at 11). In July of 2015, "SLS sent a strange man onto [Plaintiff's] property armed with a camera." (*Id.*).

---

[1] I cite Plaintiff's amended complaint by ECF page number because of duplicative paragraphs in the amended complaint.

[2] I may consider the mortgage documents because Plaintiff relies on them in her complaint. *See Cortec Industries, Inc. v. Sum Holdings, L.P.*, 949 F.2d 42, 48 (2d Cir. 1991)("Where Plaintiff has actual notice of all the information in a movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated.")(internal quotation marks and citations omitted).

In April of 2014, Bank of America and SLS "transferred the mortgage to SLS," at which point "the Plaintiff told SLS [that] they could not call her home or mobile numbers anymore because of abuse of the privilege." (*Id.*). In May of 2015, Bank of America and SLS contacted the Plaintiff "for Investor Information pertaining to her supposed mortgage debt." (*Id.* at 10). After Bank of America and SLS sent Plaintiff a collection notice, she "called to discuss this matter and sent a timely written dispute within [thirty] days of this notice requesting validation of the debt, name and address of the original creditor on June 15, 2015." (*Id.*). Neither Bank of America nor SLS responded to Plaintiff's request. (*Id.*). Plaintiff resent her request along with "another request disputing the debt and requesting original creditor [information] on June 15, 2015." (*Id.* at 11). Neither party responded. (*Id.*). Instead, SLS sent Plaintiff a "harassing letter" claiming that it and Bank of America were closing her case due to her purported failure to provide information that Plaintiff had already provided numerous times. (*Id.*). In August of 2015, Plaintiff received a harassing email from SLS threatening her with foreclosure and asking for her to supply documents that she had already provided. (*Id.* at 12). Plaintiff received a delinquency notice in November of 2015. (*Id.*).

## II.   Legal Standard

Under Fed. R. Civ. P. 12(b)(6), the Court must determine whether plaintiffs have alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Under *Twombly*, the Court accepts as true all of the complaint's factual allegations – but not conclusory allegations – when evaluating a motion to dismiss. *Id.* at 572. The Court must "draw all reasonable inferences in favor of the non-moving party." *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008). "When a complaint is based solely on wholly conclusory allegations and provides no factual

support for such claims, it is appropriate to grant defendants['] motion to dismiss." *Scott v. Town of Monroe*, 306 F. Supp. 2d 191, 198 (D. Conn. 2004). For a complaint to survive a motion to dismiss, "[a]fter the court strips away conclusory allegations, there must remain sufficient well-pleaded factual allegations to nudge plaintiff's claims across the line from conceivable to plausible." *In re Fosamax Products Liab. Litig.*, No. 09-cv-1412, 2010 WL 1654156, at *1 (S.D.N.Y. Apr. 9, 2010). In cases with a *pro se* plaintiff, "the complaint, however, inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Boykin v. Keycorp*, 521 F.3d 202, 214 (2d Cir. 2008), quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). A *pro se* plaintiff, however, still must meet the standard of facial plausibility. *See Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) ("[A] *pro se* complaint must state a plausible claim for relief.") (internal quotation marks and citations omitted).

### III. Discussion

Prior to addressing Plaintiff's counts, I note that the amended complaint does not make any substantive allegations against BONY or MERS. Plaintiff mentions BONY only once in her complaint, noting the following in the "Land Record History" section: "March 31, 2015, Mortgage Transferred (sic) from MERS to [BONY]." (ECF No. 17 at 6). This passage cannot plausibly be construed to allege actionable conduct. Plaintiff mentions MERS several times in her complaint but does not allege that it engaged in any actionable malfeasance.[3] The only part of Plaintiff's complaint which could be construed to allege wrongdoing on the part of MERS avers that the company "illegally listed themselves (sic) as a holder of the Plaintiffs (sic) mortgage prior to and on June 6, 2006." (*Id.* at 2). Yet Plaintiff does not mention this purported

---

[3] Plaintiff only mentions MERS as an intermediary in transferring her mortgage from party to party (*see* ECF No. 17 at 6). She does not reference it in the counts of her complaint.

illegal transfer of her mortgage in the counts of her complaint. Even if Plaintiff's fleeting statement were construed as alleging that MERS improperly held title in facilitating transfer of Plaintiff's mortgage to other entities, such a claim would fail in any event. *See RMS Residential Props., LLC v. Miller*, 303 Conn. 224, 237-38 (Conn. 2011) (holding mortgage not void "by virtue of the naming of a nominee of the disclosed lender as mortgagee"); *In re Residential Capital, LLC*, No. 12-12020 (MG), 2013 WL 5952004, at *5 (Bankr. S.D.N.Y. Nov. 7, 2013) ("Connecticut courts have already rejected arguments that MERS lacks authority to act as a nominee of a lender and transfer mortgages."). Thus, Plaintiff's claims against BONY and MERS are dismissed. I now consider the claims against SLS.

### A. The ADA and Rehabilitation Act Claims (count 1)

In count one, Plaintiff invokes Title II of the ADA -- 42 U.S.C. §§ 12131-12134 and 28 C.F.R. §§ 35 --, 29 U.S.C. § 794, and 28 C.F.R. § 36. (ECF No.17 at 12.). Her Title II claim is unavailing for the same reasons stated in the Court's prior orders – SLS is not a "public entity," and as a private entity, it may be not be sued under Title II. (ECF No. 70 at 4, ECF No. 12 at 11). *See Tennessee v. Lane*, 541 U.S. 509, 517 (2004) ("Title II . . . prohibits any *public entity* from discriminating against 'qualified' persons with disabilities in the provision or operation of public services, programs, or activities. The [ADA] defines the term 'public entity' to include state and local governments, as well as their agencies and instrumentalities.") (emphasis added); *Positano v. Zimmer*, 2013 WL 12084482, at *4 (E.D.N.Y. Dec. 9, 2013)(observing Title II "does not [apply to] private individuals or private entities").

Plaintiff's claim under 29 U.S.C. § 794 suffers from the same flaw, which was also noted in the Court's prior orders: she does not allege, as she must, that she was subject to discrimination under a program or activity receiving Federal financial assistance, and other than

5

her conclusory allegation that she is "legally disabled," she does not allege that she is a "qualified individual with a disability." (ECF No. 12 at 11, ECF No. 70 at 5).

Finally, Plaintiff has failed to state a claim under 28 C.F.R. § 36 for the same reasons noted in the Court's prior order. (ECF. No. 70 at 5). First, that regulation implements Title III, not Title II, of the ADA, and Plaintiff makes no claim under Title III. 28 C.F.R. 36.101 (a)("The purpose of this part is to implement subtitle A of title III of the Americans with Disabilities Act of 1990…"). In any event, that rule applies to "any (1) public accommodation; (2) commercial facility; or (3) private entity that offers examinations or courses related to applications licensing, certification, or credentialing for secondary or postsecondary education, professional, or trade purposes." *Id*. at § 36.102. Plaintiff makes no allegation that the regulation applies to SLS (nor are there factual allegations in the complaint that so suggest).

### B. The TCPA Claim (count 2)

Plaintiff has plausibly stated a claim that SLS violated the TCPA. The TCPA bars any person within the United States from making any call using an "automatic telephone dialing system . . . to any telephone number assigned to . . . any service for which the called party is charged for the call . . . ." 47 U.S.C. § 227(b)(1). The TCPA defines "automated telephone dialing system" as equipment that can place calls to telephone numbers "using a random or sequential number generator . . . ." *Id.* at § 227(a)(1). Plaintiff alleges that 104 unwanted calls were placed to her cellular and home telephones. (ECF No. 17 at 32). Although the majority of her count focuses on wrongdoing by Bank of America (*see id.* at 31-32), she notes several times that the calls in question were placed by Bank of America and SLS. (*See id.* at 11, 31). She also contends that she did not consent to the calls. (*Id.* at 31). As the Court noted in its prior order,

Plaintiff did not specifically allege that she was "charge[d] for the call[s]" but such an inference is reasonable. (ECF No. 70 at 6).[4]

### C. The CCPA Claim (count 3)

Plaintiff pleads sufficient facts in her complaint to set out a plausible claim under the CCPA against SLS. The CCPA makes it unlawful for a "creditor" to use "any abusive, harassing, fraudulent, deceptive or misleading representation, device or practice to collect or attempt to collect any debt." Conn. Gen. Stat. § 36a-646. A "creditor" means "any person to whom a debt is owed by a consumer debtor and such debt results from a transaction occurring in the ordinary course of such person's business, or . . . any person to whom such debt is assigned." Conn. Gen. Stat. § 36A-645(2). This definition does not, however "include a consumer collection agency, as defined in [Conn. Gen. Stat. § 36A-800(2)]. . . ." *Id.* A "consumer collection agency" means "any person . . . engaged as a third party in the business of collecting or receiving payment for others on any account, bill or other indebtedness from a consumer debtor. . . ." Conn. Gen. Stat. § 36A-800(2).

The only argument advanced by SLS that the Court did not previously reject in its prior order[5] (*see* ECF No. 70 at 7) concerns whether SLS counts as a "creditor" or a "consumer collection agency" under the CCPA. The issue is close. Plaintiff refers several times to "BOA & SLS *or any of the other servicers that BOA has tried to use*," suggesting that SLS was a mere servicer for BOA. (ECF No. 17 at 8, 31) (emphasis added). Yet Plaintiff's complaint, construed liberally, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be

---

[4] SLS advances a number of arguments in response to Plaintiff's TCPA claim, all of which the Court addressed in its prior order rejecting Bank of America's motion to dismiss the same claim against it. (ECF No. 70 at 6). For the sake of brevity, I do not repeat that analysis here.

[5] I once again omit the Court's prior analysis for the sake of brevity.

7

liberally construed . . .") (internal quotation marks omitted), pleads sufficient facts to warrant labelling SLS as a creditor. First, Plaintiff refers to SLS (and Bank of America) as a "debt collector" "within the meaning of [Conn. Gen. Stat. § 36A-648]. (ECF No. 17 at 4). Since that statute only references "creditors," I presume Plaintiff intended to label SLS as a "creditor" covered therein. Plaintiff also noted in her complaint that "Defendant BOA & SLS (sic)" "transferred the mortgage to SLS" in April of 2015. (ECF No. 17 at 11). Plaintiff thus contends that SLS possessed the mortgage in question, thereby rendering it a "creditor" for the purposes of the CCPA. For these reasons, the motion to dismiss the CCPA claim against SLS is denied.

### D. Breach of Covenant of Good Faith and Fair Dealing (count 5)

Plaintiff's claim for breach of covenant of good faith and fair dealing is dismissed because, as noted in the Court's prior order, she makes no factual allegations under it. (*See* ECF No. 17 at 35, ECF No. 70 at 8).

### E. Remaining Counts (counts 4 and 6)

Plaintiff's remaining counts, which claim violations of 18 U.S.C. §§ 242, 471-474, are criminal statutes and do not provide a private right of action. (*See* ECF No. 70 at 8).

## IV. Conclusion

For these reasons, (i) the motion to dismiss is granted with respect to the claims against MERS and BONY; (ii) the motion is granted in part and denied in part with respect to SLS. All of Plaintiff's claims against SLS are dismissed except for her TCPA and CCPA claims.

Now that the Court has ruled on the pending motions to dismiss, it will consider appointing counsel for Plaintiff. (*See* ECF No. 61). If Plaintiff continues to seek the appointment of counsel to litigate her TCPA and CCPA claims, she should file a statement on the docket so indicating within seven (7) days of this order.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut
October 31, 2017